**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2906-19

AFRODITE PELARDIS,

 Plaintiff-Appellant,

v.

AVENUE LE CLUB, KJS
GURUNANAK, INC., PAX
CONSTRUCTION
CORPORATION, and SIXTY
SEVEN HIGHWAY 36, LLC,

 Defendants-Respondents.

_____

  Argued September 14, 2021 – Decided September 30, 2021

  Before Judges Fisher, Currier, and Smith.

  On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1282-18.

  Howard P. Lesnik argued the cause for appellant.

  Lisa Marie DeRogatis argued the cause for respondent (Law Offices of James H. Rohlfing, attorneys; Lisa Marie DeRogatis and Misbahul Fatima, on the brief).

PER CURIAM

In this personal injury case, plaintiff Afrodite Pelardis appeals from the order entering judgment in favor of defendant KJS Gurunanak (KJS) following a jury trial. Plaintiff alleged she fell on the property where KJS operated a gas station.[1] On appeal, she contends the trial court erred in permitting certain testimony regarding her version of the events. Because we discern no abuse of discretion in the trial court's evidential rulings, we affirm.

Over the Memorial Day weekend in 2016, plaintiff attended a beach party with some friends at a restaurant in Long Branch. She testified she "drank a lot" and "was drunk." After being at the party for approximately five hours, the group left the beach, heading for home. Shortly thereafter, plaintiff asked her friend to pull over at a gas station so she could use a restroom.

According to plaintiff, when she requested to use the bathroom at the station, the man pumping gas told her it was under construction and she could "go over there." Plaintiff then walked barefoot through the parking lot to a treed area. She told the jury: "To my surprise, one foot behind the tree, and I had a weeping hose caught around my foot, huh . . . honestly, I felt myself on the

---

[1] Defendant Sixty Seven Highway 36, LLC was the landlord and owner of the property. The record does not reflect the disposition of that defendant or Pax Construction Corporation. Defendant Avenue Le Club was dismissed prior to trial.

A-2906-19

ground immediately. . . . I didn't know what happened to me . . . . I was, obviously, drunk." After walking back to the car, plaintiff asked her friends to take her to the hospital. Plaintiff suffered severe injuries as a result of her fall.

After jury selection, but before the start of testimony, the court discussed several in limine motions presented by counsel. Specifically, plaintiff advised the court that neither party intended to introduce the Monmouth Medical Center records into evidence. Plaintiff's counsel informed the court that there was a reference in the hospital record that plaintiff stated she "squatted to relieve herself and fell." Counsel did not want the jury to hear the reference to "squatting." Because the defense expert—Dr. John Brick—referenced the statement in his report, counsel stated he anticipated that defense counsel intended to ask Dr. Brick about it. Plaintiff objected to the use of the statement by Dr. Brick on the grounds it was hearsay.

Defense counsel told the court the particular entry in the record began with "patient states." Defendant argued the statement was admissible as a hearsay exception under N.J.R.E. 803(c)(4).

The trial judge found the statement was admissible under Rule 803(c)(4) because it was "reasonably pertinent to the diagnosis and treatment." The judge stated: "When [plaintiff] went to the Emergency Room, . . . they needed to know

what happened. And that is how she fell, while she was doing something . . . and that was what was told in the hospital." The judge found there was no dispute that the accident "was precipitated by the need for her to use a restroom . . . in a construction area, basically" and there was no reason to be in the area other than to use a restroom.

During his direct examination, plaintiff's counsel asked plaintiff whether she "ever, at any time, squat[ted] to urinate on the day of the accident?" She replied that she "never had the chance to relieve [herself]."

On cross-examination, defense counsel referred to the triage notes in the Monmouth Medical Center records, specifically the section entitled "History of the Present Illness." The statement, attributed in the note to plaintiff, stated that plaintiff was forty-two years old, had been drinking alcohol at the beach with her friends that day, and needed to use a bathroom as they were driving home. The note further stated that the group stopped at a gas station for plaintiff to use a restroom, but plaintiff was told the restroom was out of order and was "reportedly directed by the attendant to behind the bushes." Although plaintiff testified she did not recall giving this statement at the hospital, she conceded that all of the facts in this portion of the statement were true.

4

The note continued, "The patient states that [she] went behind the building and crouched down to urinate when she fell . . . approximately six feet down the embankment." Plaintiff testified this part of the statement was inaccurate. Plaintiff denied ever squatting or crouching behind a tree.

During the trial, plaintiff showed the jury two videos: one taken on the day of the incident by her friend, George Lambracos, and another taken by her sister, who went to the gas station the following day. Plaintiff told the jury that George's video showed her walking to a wooded area adjoining the gas station, getting her foot caught on a hose, and falling over a retaining wall.

Despite plaintiff's description of the video, neither George nor the other friends saw plaintiff fall. George testified he saw plaintiff go behind a tree to relieve herself but did not see her fall. Although George admitted he told the nurses that plaintiff "went behind the tree line to take . . . a piss and she fell over," he said during trial that he was joking and he did not actually see what happened.

Sukhjinder Singh—the owner of KJS—testified that KJS leased the gas station at the center of these events but it did not own or lease the mini mart that was under construction at the time of plaintiff's accident. Singh further stated

5

that KJS did not have any responsibility for the landscaping or the property on which plaintiff fell.

Dr. Brick was retained by defendant as an expert in alcohol pharmacology and the behavioral and psychological effects of alcohol intoxication. He was asked to opine whether plaintiff was intoxicated and whether her intoxication contributed to her accident and resulting injuries.

In preparing his report, Dr. Brick reviewed plaintiff's deposition and the Monmouth Medical Center records. He stated that in her deposition, plaintiff testified she "walked towards the trees and once she got behind one, she . . . tripped over something . . . [and] fell off . . . a retaining wall." But in the statement attributed to plaintiff in the emergency department triage records, plaintiff stated she "crouched down behind this tree and . . . fell." Brick stated: "[I]n either case, she walks to this area where there are trees with the intent of . . . urinating, and there's a . . . retaining wall, and she falls over, and is injured as a result of that."

Based on plaintiff's testimony regarding the number of alcoholic drinks she consumed over a period of several hours and the laboratory bloodwork report

in the hospital records,[2] Dr. Brick opined that plaintiff's blood alcohol level was between .18 and .2 percent at the time of her accident. According to Brick, a person with that blood alcohol level was at a sixty times greater risk to fall than someone who was sober.

Following its deliberations, the jury found KJS was not negligent.

On appeal, plaintiff challenges the admission of the "squatting" and "crouching" testimony. She contends the statements attributed to her in the hospital records were unreliable and therefore constituted inadmissible hearsay. Plaintiff does not specifically contest the testimony elicited from her during her direct and cross-examination regarding the records. She only raises this issue regarding Dr. Brick's use of her statement in the medical record.

As stated, the trial court ruled that the statement in which plaintiff said she was crouching behind a tree prior to her fall was admissible under Rule 803(c)(4) because it was pertinent to plaintiff's diagnosis and treatment.

Plaintiff does not contend this determination was incorrect. Instead, she generally argues the court erred in permitting the statement because it was unreliable. We see no support for this argument. Although several versions of

_____

[2] The hospital serum alcohol test showed a concentration of alcohol of .208. At trial, plaintiff's counsel did not object to Dr. Brick's reliance on and use of the lab report.

A-2906-19

these events were apparently set forth in the medical record,[3] those inconsistencies were explored with plaintiff and other witnesses, so the jury was informed of the discrepancies. In addition, plaintiff does not say she did not make the statement to the triage nurse, she only testified she did not recall making the statement.

As to Dr. Brick's reference to the statement, the mechanism of plaintiff's fall was not necessary for his opinion regarding her level of intoxication. In addition, Dr. Brick testified he read several versions of the circumstances surrounding the accident in the medical records. And, in any event, plaintiff fell, regardless of what she was doing just beforehand.

Dr. Brick was presented as a witness in alcohol pharmacology and the level of alcohol intoxication in plaintiff's bloodstream at the time of her fall. He did not opine regarding the negligence of defendant or whether any action taken by defendant bore a causal relationship to plaintiff's fall or injuries.

For Dr. Brick's purposes, the specific cause of plaintiff's fall was not important – whether she fell over as she was crouching to relieve herself or whether she tripped on a hose. His opinion was that plaintiff's consumption of

---

[3] The Monmouth Medical center records were not admitted into evidence and are not part of the record on appeal.

A-2906-19

alcohol caused her to have a blood alcohol level that put her at a sixty times greater risk of falling. His reference to plaintiff's statements in the medical records had no import to his opinion. Therefore, the court did not misapply its discretion in permitting the statement.

Plaintiff also contends Dr. Brick used impermissible hearsay evidence—the hospital laboratory blood serum report—to support his opinion of her level of intoxication. We disagree.

Under N.J.R.E. 703, an expert may base their opinion on facts or data "made known to the expert at or before the proceeding. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

Plaintiff did not object to Dr. Brick's use of the laboratory report during trial. Therefore, we review for plain error. R. 2:10-2.

We are satisfied Dr. Brick properly relied on the laboratory report to reach his opinion regarding plaintiff's intoxication level. The report fell within the category of data an expert is permitted to consider under Rule 703. In addition, as there was no evidence the report was not generated in the regular course of business or was unreliable or untrustworthy, it was admissible on its own as a business record under N.J.R.E. 803(c)(6).

A-2906-19

We also note, that even if there was any error in the admission of plaintiff's statement contained in the hospital record, it was harmless because the evidence only related to plaintiff's negligence. Here, the jury only considered defendant's negligence during its deliberations and found there was none.

Also raised on appeal for the first time is plaintiff's contention that Dr. Brick was not qualified to render an opinion and his methodology was flawed. These arguments lack merit. Plaintiff does not provide any specific factual or legal arguments to support her assertions. There was no objection to either the expert's qualifications or his methodology. To the contrary, prior to Dr. Brick's testimony, plaintiff's counsel asserted he did not have any objection to the expert's qualifications.

We also reject plaintiff's assertion that the trial court should have given the jury limiting instructions regarding the expert's opinion and plaintiff's intoxication. Although plaintiff's counsel objected to the voluntary intoxication charge, he was unable to provide the court any reasons for the objection. Nor has counsel done so here. Without such reasons, we cannot discern any error in the jury charge.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

10                                          A-2906-19